UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JULISSA COTA, individually and on behalf of all others similarly situated,<br><br>　　　　　　　　　　　　Plaintiff,<br><br>v.<br><br>CARROWS RESTAURANTS, LLC, a California corporation; CARROWS CALIFORNIA FAMILY RESTAURANTS, LLC, a Delaware corporation; SHARI'S MANAGEMENT CORPORATION, a Delaware corporation; and DOES 1 to 10, inclusive,<br><br>　　　　　　　　　　　　Defendants. | Case No.: 20-CV-1428 TWR (RBB)<br><br>**ORDER DISMISSING WITHOUT PREJUDICE THIS ACTION FOR FAILURE TIMELY TO EFFECT SERVICE PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 4(m) AND CIVIL LOCAL RULE 4.1** |

　　　On July 24, 2020, Plaintiff Julissa Cota filed this putative class action, alleging two causes of action for violations of (1) the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12101 *et seq.*; and (2) the Unruh Civil Rights Act ("Unruh Act"), Cal. Civ. Code § 51.  (*See generally* ECF No. 1.)  Plaintiff filed proofs of service on Defendants Carrows Restaurants, LLC (ECF No. 4); Carrows California Family Restaurants, LLC (ECF No. 5); and Shari's Management Corporation (ECF No. 6) through CSC Lawyers Incorporating Services on August 28, 2020.

On June 2, 2021, after this action was transferred to the undersigned, (*see* ECF No. 7), Plaintiff requested that the Clerk of the Court enter default against Defendants. (*See* ECF No. 8.) The Clerk entered default on June 7, 2021. (*See* ECF No. 9.) Thereafter, Plaintiff moved for default judgment on June 28, 2021, (*see generally* ECF No. 10), and filed an amended motion for default judgment on August 12, 2021. (*See generally* ECF No. 12.) On January 24, 2022, the Court set aside the Clerk's entry of default and denied Plaintiff's amended motion for default judgment on the grounds that Plaintiff had failed properly to serve Defendants, (*see generally* ECF No. 15), and ordered Plaintiff to show cause why this action should not be dismissed for failure timely to effect service pursuant to Federal Rule of Civil Procedure 4(m) and Civil Local Rule 4.1. (*See generally* ECF No. 15 (the "Jan. 24 OSC").)

On February 7, 2022, Plaintiff filed a Response to the January 24 Order to Show Cause, (*see generally* ECF No. 16 ("Pl.'s Resp.")), as well as proofs of service on Defendants through their actual registered agent of record, CT Corporation, on February 7, 2022. (*See* ECF Nos. 17 (Carrows Restaurants, LLC); ECF No. 18 (Carrows California Family Restaurants, LLC); ECF No. 19 (Shari's Management Corporation).) Plaintiff's counsel explained that there had been a "mistake" regarding service: He had initially sent his process server the wrong agent for service of process (CSC – Lawyers Incorporating Service), (*see* ECF No. 16-1 ("Coelho Decl.") ¶ 2), and, upon realizing his error, sent his process server the correct agent (CT Corporation System). (*See id.* ¶ 3.) Although the process server acknowledged receipt of the corrected agent for service of process, (*see id.* ¶ 4), service was effected on the wrong agent, (*see generally* ECF Nos. 4–6), and counsel "failed to realize that [the process server had] served the wrong Agents for Service." (*See* Coelho Decl. ¶ 5.) The following day, the Court therefore discharged the January 24 Order to Show Cause and extended nunc pro tunc Plaintiff's service deadline to February 7, 2022. (*See* ECF No. 20 (the "Feb. 8 Order").)

After the February 8 Order was docketed, however, Defendants filed their own Brief in Response to Order for Plaintiff to Show Cause Why This Action Should Not Be

Dismissed for Failure to Timely Effect Service, (*see generally* ECF No. 22 ("Defs.' Resp.")), arguing that Plaintiff had "failed to demonstrate good cause to excuse her failure to timely effect service on Defendants." (*See id.* at 2.) On February 15, 2022, the Court therefore vacated its February 8 Order discharging the January 24 Order to Show Cause and ordered Plaintiff to file "a response to Defendants' Response to the Court's Order to Show Cause addressing Defendants' authorities and the three factors relevant to establishing good cause." (*See* ECF No. 23 (the "Feb. 15 Order") at 2.)

The Court is now in receipt of Plaintiff's Brief in Response to Defendants' Response to the Court's Order to Show Cause Pursuant to the Court's Order ("Pl.'s Reply," ECF No. 24), filed on February 28, 2022. Having carefully reviewed the Parties' arguments and the relevant law, the Court **DISMISSES WITHOUT PREJUDICE** this action for failure timely to effect service.

## LEGAL STANDARD

Federal Rule of Civil Procedure 4(m) provides that:

> If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Fed. R. Civ. P. 4(m). "Rule 4(m) provides two avenues for relief. The first is mandatory: the district court must extend time for service upon a showing of good cause. The second is discretionary: if good cause is not established, the district court may extend time for service upon a showing of excusable neglect." *Lemoge v. United States*, 587 F.3d 1188, 1198 (9th Cir. 2009) (citing *In re Sheehan,* 253 F.3d 507, 512, 514 (9th Cir.2001)).

When a defendant challenges service, it is the plaintiff who bears the burden of establishing good cause. *See* Fed. R. Civ. P. 4(m); *see also Lycurgan, Inc. v. Griffith*, No. 14-CV-548 JLS (KSC), 2017 WL 4680143, at *2 (S.D. Cal. Oct. 18, 2017) (citing *Brockmeyer v. May*, 383 F.3d 798, 801 (9th Cir. 2004)). This requires the plaintiff to show "[a]t a minimum . . . excusable neglect," *see Boudette v. Barnette*, 923 F.2d 754, 756 (9th

Cir. 1991), but courts may also require the plaintiff to show that: (1) the defendant received actual notice of the lawsuit; (2) the defendant would suffer no prejudice; and (3) dismissal of the complaint would severely prejudice the plaintiff.[1]  *See id.* (citing *Hart v. United States*, 817 F.2d 78, 80–81 (9th Cir. 1987).

Even without a showing of good cause, however, a court has discretion to provide relief when a plaintiff shows "excusable neglect." *See, e.g.*, *Cano v. Brennan*, No. 19-CV-239-CAB-BGS, 2019 WL 3718670, at *2 (S.D. Cal. Aug. 7, 2019).  "Excusable neglect 'encompass[es] situations in which the failure to comply with a filing deadline is attributable to negligence,' and includes 'omissions caused by carelessness.'" *See Lemoge*, 587 F.3d at 1192 (alteration in original) (quoting *Pioneer Ins. Servs. Co. v. Brunswick Assocs., Ltd.*, 507 U.S. 380, 388, 394 (1993)).  In determining whether neglect is excusable, the court considers four factors: (1) prejudice to the opposing party; (2) length of delay and its potential impact on proceedings; (3) reason for the delay, including whether it was within the plaintiff's reasonable control; and (4) whether the plaintiff acted in good faith. *See id.* (first citing *Bateman v. U.S. Postal Serv.*, 231 F.3d 1220, 1223–24 (9th Cir. 2000); then citing *Pioneer*, U.S. at 395).

> [W]here a plaintiff has come forth with an excuse for his delay that is anything but frivolous, the burden of production shifts to the defendant to show at least some actual prejudice.  If he does so, the plaintiff must then persuade the court that such claims of prejudice are either illusory or relatively insignificant when compared to the force of his excuse.

/ / /

/ / /

---

[1] Severe prejudice to the plaintiff may, for example, include whether the statute of limitations bars the plaintiff from refiling the action.  *See Hopscotch Adoptions, Inc. v. Kachadurian*, No. CV-F-09-2101-LJO-MJS, 2010 WL 5313514, at *2 (E.D. Cal. Dec. 20, 2010) (first citing *Goodstein v. Bombardier Cap., Inc.*, 167 F.R.D. 662, 666 (D. Vt. 1996); then citing Fed. R. Civ. P. 4(m) Advisory Committee Notes (1993 Amendment)); *see also Efaw v. Williams*, 473 F.3d 1038, 1041 (9th Cir. 2007) (internal citation and quotation marks omitted) ("In making extension decisions under Rule 4(m) a district court may consider factors like a statute of limitations bar, prejudice to the defendant, actual notice of a lawsuit, and eventual service.")

*Boyle v. Am. Auto Serv., Inc.*, 571 F.3d 734, 739–40 (8th Cir. 2009) (citing *Nealey v. Transportacion Maritima Mexicana, S. A.*, 662 F.2d 1275, 1281 (9th Cir. 1980) (alteration in original). Then, whether dismissal is warranted on the grounds of failure to prosecute pursuant to Federal Rule of Civil Procedure 41(b) is based on five factors: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to defendants/respondents; (4) the availability of less drastic alternatives; and (5) the public policy favoring disposition of cases on their merits." *See Pagtalunan v. Galaza*, 291 F.3d 639, 642 (9th Cir. 2002).

## ANALYSIS

Plaintiff contends that good cause exists for her failure timely to serve Defendants and, consequently, the Court should grant her leave to serve Defendants outside the ninety-day service limit. (*See* Pl.'s Reply at 8.) Defendants, on the other hand, ask the Court to deny Plaintiff's request and dismiss this action with prejudice for failure to prosecute. (*See* Defs.' Resp. at 6–7.) Finding Plaintiff has failed to establish good cause or excusable neglect for her failure timely to effect service, the Court **DISMISSES WITHOUT PREJUDICE** this action.

**I.   Good Cause**

As discussed above, to establish good cause, Plaintiff must demonstrate "[a]t a minimum . . . excusable neglect." *See Boudette*, 923 F.2d at 756. The Court therefore examines the following factors: (1) whether Defendants received actual notice of this lawsuit; (2) whether Defendants would suffer prejudice if the Court were to extend Plaintiff's service deadline; and (3) whether dismissal of the complaint would severely prejudice Plaintiff. *See id.* (citing *Hart*, 817 F.2d at 80–81).

   **A.   Actual Notice**

Turning to the first factor in the good cause determination, Plaintiff concedes that Defendants lacked actual notice of this lawsuit until February 7, 2022, (*see* Pl.'s Reply at 3), 563 days after Plaintiff initiated this action. (*See* Defs.' Resp. at 2–4.) Defendants' lack of actual notice weighs against a finding of good cause.

### B.      *Prejudice to Defendants*

If the Court were to grant Plaintiff her requested extension of time to effect service, Defendants claim that they would "suffer substantial prejudice" in defending against this action. (*See* Defs.' Resp. at 4.) Specifically, Defendants contend that they have not preserved evidence related to their website's compliance with the ADA because their website "has undergone multiple iterations since the Complaint was filed" on July 24, 2020. (*See id.* at 4 (citing ECF No. 22-1 ("Boone Decl.") ¶ 5).) Plaintiff counters that "the prejudice Defendant[s] claim[] [they] will suffer, is slight, if any." (*See* Pl.'s Reply at 6.) Plaintiff argues that any purported loss of evidence will not prejudice Defendants because (1) Plaintiff accessed past iterations of Defendants' website using the "Way[b]ack Machine" and determined that a "majority of the website . . . remains almost wholly unchanged,"[2] and (2) "Defendant[s are] still aware of the policies and procedures [they] had in place in order to ensure that the website was ADA compliant or not." (*See id.* at 5–6.) Plaintiff's position is problematic for several reasons.

First, Plaintiff's use of the Wayback Machine does little to assuage Defendants' concerns regarding loss of evidence. Although Plaintiff contends that a "majority of the website . . . remains almost wholly unchanged," (*see* Pl.'s Reply at 6), Plaintiff offers limited detail and support regarding, among other things, (1) when specifically Plaintiff or other putative class members visited Defendants' website; (2) whether the relevant portions of Defendants' website—whatever those are—remain unchanged; and (3) whether the Wayback Machine's archives are representative of the version of Defendants' website that Plaintiff or other putative class members visited. Further, despite Plaintiff's allegation that she and other putative class members made "past and recent attempts to do business with Defendant[s] on [their] website" in 2020, (*see* Compl. ¶¶ 26, 28–29), Plaintiff uses a Wayback Machine archive of Defendants' website from only a single day in 2020, (*see*

---

[2] According to Plaintiff, the Wayback Machine is "a website [that] archives iterations of websites." (*See* Pl.'s Reply at 5.)

6

Pl.'s Reply at 5), to refute Defendants' position that their "website has undergone multiple iterations since the Complaint was filed." (*See* Defs.' Resp. at 4). All of these issues call into question the relevance of the Wayback Machine archives to the issue of prejudice and bolster Defendants' position that they are unable "to properly investigate Plaintiff's allegations as they do not have records of previous iterations of the Carrows website and do not have any way to test or defend Plaintiff's claims." (*See* Defs.' Resp. at 5.) Plaintiff's proffer of the Wayback Machine therefore fails to counter the potential prejudice—specifically, the loss of evidence—Defendants face given Plaintiff's lengthy delay in service.

Second, Plaintiff misconstrues Defendants' claim that the website has undergone multiple iterations due to the restaurant's "changing seasonal offerings." (*See* Defs.' Resp. at 4). In an attempt to stretch Defendants' statements, Plaintiff conflates Defendants' purported reason for changing the website—seasonal offerings—with a menu heading on the website entitled "seasonal." (*Compare id*. at 2, 4; *and* Boone Decl. ¶¶ 3, 5, *with* Pl.'s Reply at 6.) Plaintiff argues that the menu's "seasonal" tab remains unchanged or, alternatively, that any changes Defendants made to the "seasonal portion" of the website represent only a "small fraction" of the website. (*See* Pl.'s Reply at 6.) Because Defendants' argument concerning potential prejudice may not be limited to the "seasonal" tab of their website alone, (*see, e.g.*, Defs.' Resp. at 2 ("[T]he Carrows website is updated multiple times a year to reflect different seasonal offerings.")), the Court also finds these arguments unpersuasive.

Third, Plaintiff's conclusory argument that loss of evidence does not prejudice Defendants because they are "still aware of the policies and procedures [they] had in place in order to ensure that the website was ADA compliant or not," (*see* Pl.'s Reply at 5–6), ignores the potential prejudice Defendants face in the form of unavailable witnesses, faded memory, or loss of physical evidence. *See Nealey*, 662 F.2d at 1281; *see also Barker v. Wingo*, 407 U.S. 514, 521 (1972) (recognizing that delays in litigation may result in witness unavailability or faded memory). While "[n]ot every loss, and particularly not every loss

of memory, will prejudice the defense of a case," the Defendants' loss of evidence here is "more serious" because of its causal relation to Plaintiff's 473-day delay in service. *See id.* Further, Plaintiff appears to assume that Defendants had no ADA policies and/or procedures in place, pointing out that "[i]f Defendant[s] failed to have policies and procedures for ensuring that content uploaded to the website [wa]s [] ADA compliant, then it can be garnered logically that the website was not ADA compliant." (*See* Pl.'s Reply at 6.) The existence or absence of policies and procedures, however, does not necessarily equate with ADA compliance. Without factual support, Plaintiff's argument regarding policies and procedures is speculative and conclusory.

Because Plaintiff fails to show that Defendants will "suffer no prejudice" from the delay in service, this factor also weighs against a finding of good cause.

### C. *Prejudice to Plaintiff*

Finally, Plaintiff contends that she will be "great[ly]" prejudiced because "Defendants[] seek for Plaintiff's claims to be dismissed with prejudice" under Rule 41(b). (*See* Pl.'s Reply at 6; *see also* Defs.' Resp. at 6.) Though dismissal with prejudice constitutes the "ultimate prejudice" in barring Plaintiff from refiling her action, *see Lemoge*, 587 F.3d at 1196, under Rule 4(m), the Court "must dismiss the action *without prejudice* against [any] defendant [who is not timely served] or order that service be made within a specified time." Fed. R. Civ. P. 4(m) (emphasis added). Here, Plaintiff does not argue—and therefore fails to establish—that she would be prejudiced by dismissal of this action without prejudice. The Court, therefore, finds that the third factor weighs against a finding of good cause.

### D. *Conclusion*

Because Plaintiff fails to establish that Defendants had actual notice of this action within the ninety-day period for service, that Defendants would not suffer prejudice due to Plaintiff's lengthy service delay, and that dismissal would severely prejudice Plaintiff, the Court concludes that Plaintiff has not succeeded in showing good cause to extend her service deadline. Nonetheless, the Court retains discretion to extend Plaintiff's service

deadline if she can demonstrate "excusable neglect." *See, e.g., Cano*, 2019 WL 3718670, at *2. The Court therefore proceeds to the excusable neglect inquiry.

## II.     Excusable Neglect

The excusable neglect determination requires an equitable analysis that "tak[es] account of all relevant circumstances surrounding the party's omission" or negligence. *See Lemoge*, 587 F.3d at 1192 (quoting *Pioneer*, 507 U.S. at 395). Inadvertence, ignorance, or oversight of counsel does not constitute excusable neglect. *See Wei v. State of Hawaii*, 763 F.2d 370, 372 (9th Cir. 1985) (per curiam); *see also Mumpower v. England*, 292 F. App'x 567, 568 (9th Cir. 2008) (citing *Townsel v. Contra Costa Cty.*, 820 F.2d 319, 320 (9th Cir. 1987) ("The district court did not abuse its discretion . . . in dismissing [plaintiff's] action without prejudice because . . . his attorney's admitted failure to review the Federal Rules of Civil Procedure [did not] excuse[] his failure to effect timely service."). The Court, therefore, considers four factors: (1) prejudice to the opposing party; (2) length of delay and its potential impact on proceedings; (3) reason for the delay, including whether it was within the plaintiff's reasonable control; and (4) whether the plaintiff acted in good faith. *See Lemoge*, 587 F.3d at 1192 (internal citations omitted).

### A.     *Prejudice to Defendants*

"While excusable neglect and good cause are two distinct legal standards, the two standards overlap when it comes to analysis of the prejudice to the defendants." *Sobhani v. United States*, No. CV 14-6022 RSWL MANX, 2015 WL 3407702, at *4 (C.D. Cal. May 27, 2015) (internal citation omitted). As explained in the Court's good cause analysis, *see supra* Section I.B, Plaintiff has failed to rebut that her 473-day delay in service may cause Defendants to suffer prejudice in the form of loss of evidence. This factor, therefore, weighs against a finding of excusable neglect.

### B.     *Length of Delay and its Potential Impact on Proceedings*

"[Rule] 4(m) encourages efficient litigation by minimizing the time between commencement of an action and service of process." *Hopscotch Adoptions, Inc. v. Kachadurian*, No. CV-F-09-2101-LJO-MJS, 2010 WL 5313514, at *1 (E.D. Cal. Dec. 20,

2010) (quoting *Elec. Specialty Co. v. Rd. & Ranch Supply, Inc.*, 967 F.2d 309, 311 (9th Cir. 1992) (addressing former Fed. R. Civ. P. 4(j))). Courts have found excusable neglect when the delay in service was "minimal." *See, e.g.*, *Garcia v. Cty. of San Diego*, No. 15-CV-189 JLS-NLS, 2016 WL 11621400, at *3 (S.D. Cal. Mar. 22, 2016) (exercising discretion to extend service for a four-day delay); *Tyson v. City of Sunnyvale*, 159 F.R.D. 528, 530–31 (N.D. Cal. 1995) (exercising discretion to extend service for a one-day delay); *Strange v. Eastman Outdoors, Inc.*, No. 2:14-CV-1735-JAM-DAD, 2015 WL 12672696, at *2 (E.D. Cal. May 13, 2015) (exercising discretion to extend service for a 43-day delay). By contrast, Plaintiff here failed to effect service for 563 days, which exceeds Rule 4(m)'s service deadline by 473 days. (*See generally* ECF Nos. 1, 17–19.) Because the delay in service is significant and, given Defendants' evidentiary concerns, will likely have an impact on proceedings, this factor weighs against a finding of excusable neglect.

### C. *Reason for the Delay*

"Analysis of the reason for a delay includes 'whether it was within the reasonable control of the movant.'" *Tung Tai Grp. v. Oblon*, No. C 08-5370 JF, 2010 WL 2681962, at *3 (N.D. Cal. July 6, 2010) (quoting *Pioneer*, 507 U.S. at 395). Here, Plaintiff's counsel, Mr. Coelho, explains that he initially mistakenly sent the process server the wrong agent for service of process, (*see* Coelho Decl. ¶ 2), and then failed to recognize that the process server had still served the wrong agents despite acknowledging receipt of the correct agent, (*see id.* ¶ 5), which resulted in the erroneous proofs of service being filed with this Court. (*See generally* ECF Nos. 4–6.)

In arguing that the reason for the service delay here was reasonable, Plaintiff cites to *Tain v. Hennessey*, (*see* Pl.'s Reply at 4–5), in which the district court found that the plaintiff had established good cause for her failure timely to effect service after she had attempted service by publication for six successive weeks in a local periodical. No. 03CV1481-IEG-NLS, 2009 WL 2151883, at *1, *4 (S.D. Cal. July 16, 2009). In *Tain*, the "[p]laintiff mistakenly relied upon the representations by the [out-of-state periodical] that it was a newspaper of general circulation." *See id.* at *2. Here, however, Mr. Coelho did

not rely on inaccurate "representations" from his process server. *Cf. id.* Rather, Mr. Coelho had the proofs of service at his disposal, which plainly revealed that the incorrect agent had been served. (*See* ECF Nos. 4–6.) Mr. Coelho had "reasonable control" over the accuracy of his filings with the Court, *see Pioneer*, 507 U.S. at 395, especially considering that he had previously flagged the misidentification of the agents for service. (*See* Coelho Decl. ¶ 3.) Aware of his original blunder, Mr. Coelho had the opportunity both to verify that the proofs of service he received reflected service on the proper registered agent and to correct any errors by directing his process server to effect service on the correct agents.

While Mr. Coelho's oversight undoubtedly affects Ms. Cota's claim, "litigants are bound by the conduct of their attorneys, absent egregious circumstances," which have not been established here. *See Wei*, 763 F.2d at 372 (internal citations omitted); *see also Pioneer*, 507 U.S. at 396–97. Mr. Coelho's inadvertence and oversight, therefore, does not favor a finding of excusable neglect. *See, e.g.*, *Wei*, 763 F.2d at 372 (desire to amend complaint did not excuse delayed service); *see also Mumpower*, 292 F. App'x at 568 (failure to review the Federal Rules of Civil Procedure did not excuse delayed service); *Townsel*, 820 F.2d at 320 (ignorance of the governing rule did not excuse delayed service).

### D.     Good Faith

Defendants do not argue that Plaintiff acted in bad faith, (*see generally* Defs.' Resp.), and the Court finds no indication that Plaintiff's error was the product of "deviousness or willfulness." *See Bateman*, 231 F.3d at 1225. This factor, therefore, weighs in favor of excusable neglect.

### E.     Conclusion

Although Plaintiff acted in good faith, her counsel's inadvertent error does not qualify as excusable neglect. *See Wei*, 763 F.2d at 372. Because Plaintiff's delay also exceeded the deadline pursuant to Rule 4(m) by 473 days and Defendants, as a result of the delay, are prejudiced moving forward in litigation, the Court finds no excusable neglect for Plaintiff's failure timely to effect service. The Court therefore declines to exercise its discretion to further extend Plaintiff's service deadline.

### III. Failure to Prosecute

Because the Court does not find good cause or excusable neglect for Plaintiff's failure timely to serve Defendants, it need not reach the failure to prosecute issue pursuant to Rule 41(b).

### CONCLUSION

In light of the foregoing, the Court **DISMISSES WITHOUT PREJUDICE** this action for failure timely to effect service pursuant to Federal Rule of Civil Procedure 4(m) and Civil Local Rule 4.1. Accordingly, the Clerk of the Court **SHALL CLOSE** the file.

**IT IS SO ORDERED.**

Dated: June 13, 2022

_____
Honorable Todd W. Robinson
United States District Court